UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>DANIELA LEDESMA-SALDIVAR,<br><br>　　　　　　　　　　　　Defendant. | Case No.:  20MJ20174-WVG<br><br>ORDER ON APPEAL TO VACATE CONVICTION PURSUANT TO 18 U.S.C. § 3402<br>[Doc. No. 38] |

　　　　On June 10, 2020 following a bench trial, U.S. Magistrate Judge William V. Gallo found defendant Daniela Ledesma-Saldivar guilty of attempted entry into the United States at a time or place other than as designated by immigration officers, in violation of 8 U.S.C. §1325(a)(1).  Defendant was sentenced to time served.  [Doc. No. 32.]

　　　　Defendant appeals that conviction on the following grounds: (1) the government did not introduce sufficient evidence to corroborate the defendant's admission that she crossed into the United States at a non-designated place; (2) the government did not prove that defendant's post-arrest confession complied with the requirements of *Miranda*[1]; and (3)

---

[1] *Miranda v. Arizona*, 384 U.S.436 (1966).

the government failed to sufficiently establish the defendant's identity.[2]  She requests the Court vacate her conviction and either enter judgment of acquittal or remand for a new trial. [Doc. Nos. 38, 44.]

Judgment was entered on June 10, 2020. [Doc. No. 35.] The notice of appeal was timely filed on June 19, 2020. [Doc. No. 38.] *See* Fed. R. App. P. 58(g)(2)(b). This Court has jurisdiction to review defendant's conviction under 18 U.S.C. § 3402.

**A. Facts**

At trial Border Patrol Agent David Helmick testified that on January 18, 2020 he was assigned to the scope unit at the Brown Field Station to perform detection duty in the Otay Mountain area, an area described as mountainous, with a lot of canyons and rocky terrain. [Doc. No. 42 (Trial Transcript), at 9-10, 46.]  He was on Tecate Peak performing surveillance of an area north of the international border, with the objective of locating two individuals who had escaped Border Patrol custody in that area earlier in the day. [Id., at 11-12.]  Agent Helmick spotted two individuals walking in a creek bed in a rugged area with a lot of brush. [Id., at 14.] He notified Agent David Nunez.  Agent Nunez was on the ATV team patrolling the area.  [Id., at 48.]

Agent Nunez had also been advised that earlier in the day two individuals had been encountered by Border Patrol in the area and had escaped custody.  [Id., at 50.]  He was assigned to look for them in the rural area he was patrolling. [Id.]  Agent Helmick guided Agent Nunez by radio transmission to the spot where Agent Helmick had detected with his scope the two individuals walking. [Id., at 51.]

---

[2] Defendant also asserts that the magistrate judge erred by denying the defendant's motions to dismiss based on challenges that 8 U.S.C. § 1325 violates the non-delegation doctrine, is unconstitutionally vague and violates the due-process clause and that the defendant's prosecution "as part of operation streamline" violates equal protection and due process.  Recognizing these challenges have been repeatedly rejected by the District Court, defendant acknowledges they are included in her appeal to preserve them for possible further review by the Ninth Circuit. This Court therefore affirms the magistrate judge's denial of these motions to dismiss with no further analysis.

1       Agent Nunez encountered a man and a woman sitting under a bush. [Id. at 53.] The man had a set of law-enforcement handcuffs attached to one of his wrists. The encounter took place approximately 1.2 miles north of the international border and 2.5 miles east of the Tecate Port of Entry, the nearest port to the location. [Id., at 54.] It was a remote rural area that would not attract pedestrian traffic, with no businesses or churches in the vicinity. [Id., at 59-60.]

      Agent Nunez conducted a field interview of the defendant, whom he identified at trial as the person he encountered on January 18, 2020. [Id., at 55.] The defendant admitted that she was a Mexican citizen without immigration documents that would allow her to be lawfully in the United States. [Id., at 56-57.] Agent Nunez then placed her under arrest and the defendant was transported to the Brown Field Station. [Id., at 60.]

      At the Brown Field Station Border Patrol Agent Pedro Rivas conducted an interview of the defendant, whom he also identified at trial as the person he interviewed on January 18, 2020. [Id., at 83-84.] The post-arrest interview was conducted in an interview room at the station by Agent Rivas in Spanish with another agent present. The defendant was not handcuffed or in any restraints. Agent Rivas was in plain clothes without a firearm and the other agent was in uniform also without a firearm. The defendant was described as calm, quiet and cooperative. [Id., at 85-86.]

      Before questioning the defendant, Agent Rivas testified he read the defendant her *Miranda* rights in Spanish. [Id., 87- 88.] He testified he used a Border Patrol form covering the defendant's rights and had her confirm line-by-line that she understood her rights. [Id., at 88.] Agent Rivas testified that the defendant indicated she understood her rights, that she initialed the form acknowledging she understood each of her rights and that she was willing to talk with him without counsel present. [Id.]

      The defendant stated her name, Daniela Ledesma-Saldivar, clarifying an earlier misspelling of her first name recorded by Agent Nunez. [Id., at 89.] She stated she was born in Mexico and was a citizen of Mexico. [Id., at 89-90.] She stated she was in the United States illegally, without documents and that she entered by walking through the

mountains. [Id., at 91.]  The defendant also admitted that she had previous contact with Border Patrol agents that day in the field. [Id.]

### B. The Government Introduced Sufficient Evidence to Corroborate Defendant's Admission.

At the close of the trial, the magistrate judge denied defendant's motion for acquittal in which she argued the government did not offer sufficient proof of the offense.[3]  The denial is reviewed *de novo* and this Court reviews the evidence in the light most favorable to the government to determine if there was sufficient evidence to support a finding by any rational trier of fact that the essential elements of the crime had been established beyond a reasonable doubt.  *United States v. Hernandez*, 105 F.3d 1330, 1332 (9th Cir. 1997).

The defendant was convicted of attempting to enter the United States at a time or place other than designated by immigration officers in violation of 8 U.S.C. §1325(a)(1).  The parties agree that the primary evidence of the element of the offense, that she entered at a place other than designated by immigration officers, was the defendant's own admission that she entered by walking through the mountains.  Defendant now argues on appeal that the government did not provide "some independent corroborating evidence" of the defendant's admission of this element and the conviction cannot rest on only defendant's uncorroborated confession.  *Hernandez*, 105 F.3d at 1332.

"To satisfy the corroboration requirement, the government must introduce independent evidence tending to establish the trustworthiness of the admission, unless the confession is, by virtue of special circumstances, inherently reliable."  *Id.*  Corroboration of a defendant's admission is a mixed question of law and of fact that is primarily factual and is therefore reviewed for clear error.  *Id.*

---

[3] Defendant did not make the argument now raised on appeal, regarding whether there was corroborating evidence that she entered at an undesignated place.  Defendant argued somewhat abstractly that there was insufficient evidence for Border Patrol to determine at the time she was encountered that she was engaged in unlawful activity.  [Doc. No. 42, at 117, 123-125.] Defendant is not however arguing on appeal that defendant's detention in the field by Agent Nunez was without reasonable suspicion that she may have been involved in criminal activity.

Defendant suggests that the government did not disprove that contrary to her own statement she actually may have snuck into the United States through a port of entry and then headed east on foot toward the rural area where she was encountered, a violation of 8 U.S.C. § 1325(a)(2) (evading inspection).  The circumstantial evidence presented by the government however corroborates the defendant's admission.  She was encountered on January 18, 2020 by Border Patrol agents in an area 2.5 east of the nearest port of entry. The area was rugged and remote with no enticements that would lead a pedestrian to travel eastward away from the nearest port of entry toward a mountainous rural area.

A rational trier of fact could find from the location where the defendant was encountered by border patrol and the totality of the circumstances that this evidence corroborated her own admission that she came on foot through the mountains. Defendant has not demonstrated that on the record in this case such a factual finding is clear error.

### C. The Magistrate Judge Did Not Err in Denying Defendant's Motion to Suppress her Post-Arrest Statement.

The defendant contends that the magistrate judge erred by not granting her motion to suppress her post-arrest confession.  The magistrate judge noted that defendant's motion was filed without any factual support as required by the District's local rule, CrimLR 47.1(g), challenging the sufficiency of the Miranda advisement. [Doc. No. 42, at 7-8.] The magistrate judge however deferred on the motion to consider the evidence presented at trial regarding the defendant's post-arrest statement. [Id., at 8.]

Agent Rivas testified that he advised the defendant of her rights in accordance with the form used by Border Patrol. He reviewed the form with her in Spanish line-by-line and he testified that she acknowledged she understood each of her rights and she agreed to answer questions without an attorney present.  This evidence was uncontradicted.

After trial, the magistrate judge found no violation of the defendant's *Miranda* rights or evidence that the statements were involuntary and denied defendant's motion to suppress her post-arrest statements. [Id., at 125.]

This Court reviews *de novo* whether defendant voluntarily waived her rights under *Miranda* and for clear error whether the waiver was knowing and intelligent. The burden is on the government to show defendant was aware of her rights and that she waived them. *United States v. Cazares*, 121 F.3d 1241, 1243-44 (9th Cir. 1997).

The government produced evidence that Agent Rivas reviewed with defendant in Spanish her *Miranda* rights from the Border Patrol's advisement form. The evidence was that defendant was asked to acknowledge line-by-line that she understood each of her rights and that she indicated that she did by initialing each right individually. There was no evidence indicating that the interview was in anyway coerced or that her waiver was involuntary.

Defendant argues that the government did not met its burden to demonstrate the defendant was aware of all her rights because the agent only specifically mentioned her right to remain silent in his testimony as an example regarding the *Miranda* advisal. [Doc. No. 42, at 88.] However, the testimony was unchallenged that Agent Rivas went over each of the defendant's rights, line by line, as set forth on the Border Patrol's advisement form and the defendant acknowledged she understood each right individually.

Nothing in this record contradicts that the agent fully advised the defendant of all her rights under *Miranda* and obtained her knowing and voluntary waiver prior to questioning her. *See Cazares*, 121 F.3d at 1244 (recitation of the rights accompanied by the officer's confirming the defendant understood his rights was sufficient to establish that defendant knew his rights). The order denying suppression of the defendant's post-arrest statement is affirmed.

**D. The Defendant's Identity was Sufficiently Established.**

The record established that there had been an initial misspelling by Agent Nunez of the defendant's first name, ending "Daniela" with an "i" instead of an "a." [Doc. No. 42, at 51.] The record also established that this was corrected at the time of her post-arrest statement by the defendant. [Id., at 89.] Her name was properly recorded by Agent Rivas and used later by Agent Daniel Alexander, the designated A-File custodian, to search for

1  any applications for admission that might have been made by or on behalf of the defendant.
2  [Id., at 111-112.]

3  The defendant was identified at trial by Agent Nunez who arrested her and Agent
4  Rivas who questioned her.  The record demonstrates no issue with the identification of the
5  defendant as the person arrested on January 18, 2020 or that the name and birth date used
6  to search records for her immigration status were incorrect.

7  Defendant's contention that the record established that the person arrested on
8  January 18, 2020 by Agent Nunez was a person named "Danieli Ledesma Saldivar" and
9  therefore was not the defendant Daniela Ledesma Saldivar, simply ignores the testimony
10  that her name was clarified during her interview and she was charged and investigated by
11  her correct name in all following proceedings. [Doc. No. 1.]

12  Viewing the evidence in the light most favorable to the government, any reasonable
13  and rational trier of fact could find the identity of the defendant was established beyond a
14  reasonable doubt.

15  The motion to vacate the defendant's conviction on the basis that the government
16  failed to properly identify the defendant as the person arrested on January 18, 2020 is
17  denied.

18  **E. Conclusion**

19  Defendant's motion to vacate her conviction or in the alternative order a new trial is
20  **DENIED**.

21  Dated:  December 3, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge